# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:<br><br>DARYL WARNER TINKESS and<br>SALLY ANN TINKESS,<br><br>                  Debtors. | Case No. K08-00153-DMD<br>Chapter 7<br><br>**Filed On**<br><br>**9/26/08** |
| In re:<br><br>DONALD LEROY HAYES,<br><br>                  Debtor. | Case No. K08-00155-DMD<br>Chapter 7 |
| In re:<br><br>DANIEL LEE HAYES and VICKY<br>ALLYN HAYES,<br><br>                  Debtors. | Case No. K08-00156-DMD<br>Chapter 7 |

### MEMORANDUM ON ALASKA NATIONAL INSURANCE COMPANY'S OBJECTION TO CLAIM OF EXEMPTIONS
### [Re: PFDS]

Alaska National Insurance Company ("ANIC") objects to the debtors' claims of exemption in their 2007 Alaska Permanent Fund Dividends ("PFDs"). ANIC contends that the debtors no longer had an interest in the PFDs at the time they filed their chapter 7 petitions. The debtors claim they did, and that they are entitled to take the "wild card" exemption provided by 11 U.S.C. § 522(d)(5) to exempt the full amount of their PFDs. For the reasons stated below, I find for the debtors. ANIC's objection to the debtors' exemptions will be overruled.

Background

These three chapter 7 cases are related because the debtors were all formerly principals in an entity known as 3-D Logging. In March, 2007, ANIC obtained a judgment by confession in the amount of $115,966.60 against 3-D Logging and the debtors, individually, in Anchorage Superior Court Case No. 3AN-06-13508-CV. ANIC obtained writs of execution and levied against each of the debtors' 2007 PFDs shortly thereafter. In compliance with the writ, in late October and mid-November of 2007, the Alaska Department of Revenue sent checks for 80% of the debtors' 2007 PFDs directly to the state court registry. The debtors each received 20% of their 2007 PFD, along with a notice from the Department of Revenue advising them they had 30 days from the date of the notice to file an objection to the seizure of their PFD.[1]

The debtors filed objections to the seizure of their PFDs in the state court action and claimed them exempt. ANIC filed responses and requested a hearing. Before the state court could resolve the matter, the debtors filed bankruptcy petitions on March 26, 2008. On their Schedules, they all initially claimed their PFDs exempt pursuant to "Alaska law." In amended Schedules C filed by Daryl and Sally Tinkess in Case No. K08-00153-DMD, and by Daniel and Vicky Hayes in Case No. K08-00156-DMD, the debtors claimed the full amount of their PFD exempt under 11 U.S.C. § 522(d)(5) (the "wild card" exemption). Donald Hayes also filed an amended Schedule C, in Case No. K08-00155-DMD, but didn't include his 2007 PFD on the amended list.

In all three bankruptcy cases, ANIC has filed an objection to the debtors' exemption of the 2007 PFDs. ANIC argues that only 20% of the PFD may be exempted,

---

[1] AS 43.23.065(a), (d)(5) (2008).

2

pursuant to AS 43.23.065. ANIC contends the debtors had no property interest in the PFDs when they filed their bankruptcy petitions, and therefore couldn't claim the PFDs exempt under § 522(d)(5). ANIC's argument is based on the fact that the Alaska Department of Revenue issued the checks to the state court more than 90 days prior to the date the debtors filed their petitions. The debtors have filed responses to ANIC's objection. All parties rely on *In re Jousma*,[2] to support their respective positions.

Analysis

    I.    The *Jousma* Decision

ANIC argues the debtors no longer held an interest in the portion of their PFDs being held in the state court registry because the funds were paid to the state court more than 90 days before the debtors filed their bankruptcy petitions. ANIC contends these chapter 7 cases are distinguishable from *Jousma* because, in that case, the PFD check was remitted to the state court registry within 90 days of the date that Mr. Jousma filed bankruptcy. A close reading of *Jousma* doesn't support ANIC's position. In *Jousma*, Ketchikan Credit Bureau argued that it was entitled to retain debtor Jousma's PFD because it had *levied* on the PFD more than 90 days before the petition was filed, and the debtor therefore couldn't recover the PFD as a preference.

> Ketchikan Credit Bureau has taken the position that serving an execution on the Permanent Fund Dividend removes whatever property interest the debtor might have had in that property. Therefore, if a bankruptcy petition was filed *within 90 days of the execution*, the debtor could recover the right to receive the Permanent Fund

---

[2] 5 ABR 423 (D. Alaska 1998).

3

> Dividend as a preference under 11 U.S.C. § 547. But if, as here, the bankruptcy petition was filed more than 90 days after execution, Ketchikan Credit Bureau would be entitled to the Permanent Fund Dividend pursuant to its levy.[3]

The District Court did not adopt Ketchikan Credit Bureau's argument. The court concluded that "under Alaska law execution of the levy did not transfer title to the executed-upon portion of Jousma's Permanent Fund Dividend to Ketchikan Credit Bureau."[4] It found that a valid levy subjected a judgment debtor's interest in the asset to execution, but that such a levy was "not the equivalent of a transfer of title from the judgment debtor."[5] The court further stated that, even after levy, Ketchikan Credit Bureau was not entitled to receive the funds until authorization was obtained from the court which issued the writ of execution, and that Jousma was entitled to "take exception to disbursement of the funds" to the levying creditor.[6] The District Court held that,

> [U]nder Alaska execution procedures, the debtor owns the levied property until it is sold by order of the court or, in the case of money, until the court directs payment of the debtor's money to the creditor. Thus, within 90 days of his bankruptcy filing, Jousma still owned the property for purposes of 11 U.S.C. § 541(a), and the garnished portion of Jousma's Permanent Fund Dividend should have become part of the bankruptcy estate subject to Ketchikan Credit Bureau's writ of execution. Mere service of a writ of execution

---

[3] *Jousma*, 5 ABR 425-26 (emphasis added, citation omitted).

[4] *Id.* at 427.

[5] *Id.*

[6] *Id.* at 428.

4

>does not divest the judgment debtor of ownership of the money in question.[7]

The District Court didn't explain the significance of the 90 day period in its decision. In fact, in the entire opinion, the 90 day period is only mentioned twice; once when discussing Ketchikan Credit Bureau's argument that it was entitled to the PFD because its *levy* had occurred outside the 90 day preference period, and again when the District Court concluded Jousma still held an interest in the PFD within 90 days of filing. But the 90 day period was immaterial to the court's holding, which is that a levy alone does not transfer title to property from a judgment debtor to a judgment creditor. This conclusion is consistent with state law. A judgment creditor obtains a judicial lien against levied property.[8]

A judicial lien remains on the levied property until it is sold at an execution sale or, in the case of money, the court directs the release of the funds to the judgment creditor.[9] The deposit of levied funds into the state court registry doesn't affect the creditor's judicial lien or the debtor's interest in the funds. Accordingly, in the instant cases, at the time the debtors filed their bankruptcy petitions, they still held an interest in the portion of their

---

[7] *Id.* at 429.

[8] The Alaska statutes define a "judicial lien" as "a lien on property obtained by judgment, *levy*, sequestration, or other legal or equitable process or proceeding instituted for the purpose of collecting a debt." AS 09.38.500(9)(2008) (emphasis added). *See also Reynolds v. Sisco Group, Inc.*, 70 P.3d 388, 391 (Alaska 2003) (once property is levied upon, the judgment creditor holds a "lien-like interest" against it).

[9] *Jousma*, 5 A.B.R. at 429; *see also* Ak. Civil R. 69(h)(1) (which provides that the Alaska Department of Revenue may deliver PFDs which have been levied upon directly to the state court, which will then "disburse the funds as provided by law"); *Executing on the Permanent Fund Dividend - Creditor Instructions*, CIV-503 (Alaska Court System, September 2008) at p. 5, accessible on the Internet at: http://www.state.ak.us/courts/forms/civ-503.pdf (if a debtor objects to seizure of PFD funds, the court will set a hearing to review the objection and decide whether the funds should be released to the debtor or creditor).

5

PFDs which had been levied upon by ANIC, and ANIC held a judicial lien against those funds.

## II. The Debtor's Avoidance Powers

In *Jousma*, Ketchikan Credit Bureau had argued that, under 11 U.S.C. § 547, it was entitled to recover the levied portion of the PFD because its *levy* had occurred more than 90 days before the bankruptcy filing. ANIC has made a similar argument here, based on the fact that the levied portion of the PFDs were *deposited* into the state court registry more than 90 days before the debtors filed their petitions. Section 547 gives the bankruptcy trustee the right to avoid, or set aside, certain transfers as preferences if the transfer occurred within 90 days of the bankruptcy filing, was on account of a prepetition debt, was made while the debtor was insolvent, and enabled the creditor to receive more than it would have received in a chapter 7 case if the transfer had not been made.[10]

The debtor has no authority to set aside a preference under § 547. However, if the bankruptcy trustee chooses not to use his avoidance powers under § 547 to recover

---

[10] 11 U.S.C. § 547(b) permits the trustee to recover a "transfer of an interest of the debtor in property" if such transfer was:
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made –
        (A) on or within 90 days before the date of the filing of the petition; or
        (B) between ninety days and one year before the date of the petition, if such creditor at the time of such transfer was an insider; and
    (5) that enables such creditor to receive more than such creditor would receive if –
        (A) the case were a case under chapter 7 of this title;
        (B) the transfer had not been made; and
        (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

property which the debtor could claim exempt, then the debtor may seek to avoid the transfer pursuant to 11 U.S.C. § 522(h).[11] And § 522(h) is not the only weapon in the debtor's arsenal for recovering exempt property. Section 522(f) permits the debtor to avoid judicial liens to the extent that such liens impair an exemption to which the debtor would otherwise be entitled.[12] This subsection provides, in part:

> (f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is –
>
> (A) a judicial lien, other than a judicial lien that secured a debt of a kind that is specified in section 523(a)(5) [a domestic support obligation], . . . .[13]

Unlike preferences, a debtor's ability to avoid judicial liens under § 522(f) is not limited to transactions occurring within 90 days of the date the petition was filed. If the judicial lien falls within the parameters of § 522(f) and impairs an exemption that the debtor could claim, the debtor may move to avoid the lien and recover the exempt property. Accordingly, in the cases at issue here, the debtors could seek relief under § 522(f) by filing motions to avoid

---

[11] 11 U.S.C. § 522(h) allows a debtor to avoid a transfer of property, to the extent of any exemption that could be claimed in that property, if:
    (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
    (2) the trustee does not attempt to avoid such transfer.

[12] 11 U.S.C. § 522(f). The debtor also has avoidance powers under § 522(g) and (i), but those powers are not discussed in detail in this decision.

[13] 11 U.S.C. § 522(f)(1)(2008).

7

ANIC's judicial liens against the PFDs, if the judicial liens impair an exemption that the debtors could claim in the funds.

### III. In Alaska, Debtors may Claim Federal or State Exemptions in Bankruptcy

ANIC contends that under state law, no more than 20% of a judgment debtor's PFD can be exempt from execution.[14] ANIC says the debtors in these three related cases have received the exempt portion of their PFDs and are entitled to no more. However, debtors in this district routinely claim federal bankruptcy exemptions, and often apply the "wild card" exemption found in 11 U.S.C. § 522(d)(5)[15] to claim the entirety of their PFD exempt. Further, many debtors in situations similar to Jousma's have succeeded in avoiding prepetition judicial liens and recovering the levied portion of their PFDs. A debtor's ability to do this is based on the assumption that, in Alaska, a debtor may claim the exemptions permitted by state law *or* federal bankruptcy law.

> Section 522 is the principal Bankruptcy Code section governing exemptions in bankruptcy cases. Section 522(d) lists categories of property in varying amounts that a debtor may claim as exempt. Section 522(b) provides that states can prohibit their citizens from choosing the exemptions set out in section 522(d). States that take advantage of this opportunity to "opt out" of the federal exemption system can limit their citizens to the exemptions available under applicable state and nonbankruptcy federal law. . . . If the debtor's state has not opted out of the federal exemption system, the debtor can choose

---

[14] AS 43.23.065(a).

[15] Subsection 522(d)(5) permits a debtor to exempt his or her "aggregate interest in *any* property, not to exceed in value $1,075 plus up to $10,125 of any unused amount of the exemption provided under paragraph (1) of this subsection." 11 U.S.C. § 522(d)(5) (2008) (emphasis added).

8

> between either the exemptions of section 522(d)
> or the exemptions available under applicable state
> and nonbankruptcy federal law.[16]

The treatment of exemptions under § 522 "represents a significant departure from prior bankruptcy law" where a debtor's exemptions were determined under nonbankruptcy law and limited to the exemptions available in the state where a debtor was domiciled.[17]

*Collier* notes that approximately 34 states have opted out of the federal exemption system.[18] Alaska is not listed as one of those states. A review of the "opt out" statutes from the states listed by *Collier* shows that, almost without exception, the applicable statute expressly says that residents of the state cannot take the exemptions found in § 522(d). For example, the Arizona statute provides, "residents of this state are not entitled to the federal exemptions provided in 11 U.S.C. § 522(d)."[19] Other "opt out" statutes contain similar language.[20] Subsection 522(b)(2) appears to require this type of specificity in an "opt out" statute; a debtor is permitted to choose the federal bankruptcy exemptions set out in

---

[16] 4 *Collier on Bankruptcy* ¶ 522.01 at p. 522-16 (15th ed. rev'd 2008) (citations omitted).

[17] *Id.* at ¶ 522.02[1], p. 522-17 (citation omitted).

[18] *Id.* at ¶ 522.01, p. 522-16 n.3.

[19] Ariz. Revised Stat. § 33-1133(b)(2008).

[20] *See, e.g.,* Ala. Code § 6-10-11(2008) [Alabama residents are entitled to exemptions under state law and federal laws "other than subsection (d) of Section 522"]; Calif. Code of Civ. P. § 703.130 (2008); Colorado Revised Stat. § 13-54-107 (2008); Delaware Code Title 10 § 4914(a) (2008); Florida Stat. § 222.20 (2008); Georgia Code § 44-13-100(b) (2008); Indiana Code § 34-55-10-1 (2008); Iowa Code § 627.10 (2008); Louisiana Revised Stat. § 13:3881(B)(1) (2008); Maryland Code, Courts and Judicial Proceedings § 11-504(g)(2008); Mississippi Code § 85-3-2 (2008); Missouri Stat. § 513.427 (2008); Montana Code § 31-2-106 (2008); Nebraska Revised Stat. § 25-15,105 (2008); Nevada Revised Stat. § 21.090(3)(2008); N. Carolina General Stat. § 1C-1601(f)(2008); N. Dakota Century Code § 28-22-17 (2008); Ohio Revised Code § 2329.662 (2008); Oklahoma Stat. Title 31 § 1(B)(2008); Oregon Revised Stat. § 18.300 (2008); S. Carolina Code § 15-41-35 (2008); Tenn. Code § 26-2-112 (2008); Utah Code § 78B-5-513 (2008); Virginia Code § 34-3.1 (2008); W. Virginia Code § 38-10-4 (2008); Wyoming Stat. § 1-20-109 (2008). The Idaho statute simply provides, "[i]n any federal bankruptcy proceeding, an individual debtor may exempt from property of the estate only such property as is specified under the law of this state." Idaho Code § 11-609 (2008).

9

§ 522(d), "unless the State law that is applicable to the debtor . . . specifically does not so authorize."[21]

Alaska Statute § 09.38.055 provides, "[i]n a proceeding under 11 U.S.C. (Bankruptcy) only the exemptions under AS 09.38.010, 09.38.015(a), 09.38.017, 09.38.020, 29.38.025 and 09.38.030 apply."[22] In an earlier, unpublished opinion from this district, *In re Lindquist*, Judge Williams held that AS 09.38.055 was not an "opt out" statute.[23] The court reached this conclusion on two grounds. First, it found that an opt out provision was only effective "in the case of a definite statement by the state legislature" that the federal bankruptcy exemptions could not be taken.[24] Second, a review of the legislative history of AS 09.38.055 lead the court to the conclusion that the Alaska legislature was not considering the Bankruptcy Code's opt out provision when the state statute was enacted.[25]

I have reviewed the limited legislative history surrounding the enactment of AS 09.38.055, and have compared the language of AS 09.38.055 to the opt out statutes from other states. I agree with the reasoning of *Lindquist*. There is no specific language in the Alaska statute which says debtors in Alaska cannot take the federal bankruptcy exemptions found in § 522(d). The Bankruptcy Code requires that a state's opt out decision be specific.[26] Further, the limited documentation this court has found regarding the legislative history of

---

[21] 11 U.S.C. § 522(b)(2)(2008).

[22] AS 09.38.055 (2008).

[23] Order Allowing Exemptions entered Sept. 9, 1985 (Docket No. 37), *In re Lindquist*, Bankruptcy Case No. 3-84-00081 (Chapter 7)(copy attached).

[24] *Id.* at 1.

[25] *Id.*

[26] 11 U.S.C. § 522(b)(2)(2008).

10

AS 09.38.055 shows that the Alaska legislature did not intend to opt out of the § 522(d) exemptions but instead restrict the state exemptions that could be taken by Alaskan debtors in bankruptcy.

An earlier version of AS 09.38.055 was proposed in the late 1970's as part of House Bill 56 ("HB 56"), the Alaska Exemptions Act. Proposed Sec. 09.38.055 provided:

> Sec. 09.38.055. BANKRUPTCY PROCEEDINGS. In a proceeding under the Bankruptcy Act (11 U.S.C.) only the exemptions under AS 09.38.010, 09.38.015(a), 09.38.020, 09.389.025 and 09.38.030 apply. The exemption of certain permits, licenses, and certificates provided in AS 09.38.015(b) does not apply in a proceeding under chapter VII of the Bankruptcy Act. (11 U.S.C.).[27]

HB 56 was proposed for two reasons.[28] First, the Alaska Code Revision Commission found that the current Alaska exemption laws were out of date and inadequate insofar as providing for the basic necessities for a judgment debtor and his or her family.[29] Second, there was a feeling that state exemption laws should be more uniform, particularly in light of the anticipated changes that would be brought by the newly enacted Bankruptcy Code.[30]

---

[27] House Bill No. 56, introduced Jan. 24, 1979, at p. 8. Document obtained from the Legislative Information Office, Juneau, from catalog records of HB 56 from 1979 (Legislative Library Catalog Card No. 7900300).

[28] Memorandum from Margaret W. Berck, Staff, to Charlie Parr, Chairman, and Members of the House Judiciary Committee, dated Sept. 13, 1979, regarding the Alaska Exemptions Act, HB 56. Document obtained from the Legislative Information Office, Juneau, from catalog records of HB 56 from 1979 (Legislative Library Catalog Card No. 7900300).

[29] *Id.*, p. 1.

[30] *Id.*, pp. 1-2.

A sectional analysis of HB 56, prepared by the Legislative Affairs Agency, stated that the ultimate purpose of the legislation was "to modernize and simplify the exemptions laws of Alaska."[31] With regard to the proposed section on "Bankruptcy Proceedings," the analysis commented:

> The bankruptcy law vests in the federal district court exclusive jurisdiction to determine exemptions, but that court is bound to follow state law and the interpretation placed upon state statutes . . . . The intent of the Commission in adding sec. 120 is to specifically designate which *state exemptions* are available to a bankrupt.[32]

During the time HB 56 was under consideration, the Bankruptcy Code was enacted. A memorandum from the Legislative Counsel regarding the new changes created by § 522 was prepared and submitted to the House Judiciary Committee on August 15, 1979.[33] The memorandum commented on the new "opt out" provisions, but seemed to assume that Alaska would permit debtors to select either exemption scheme:

> Congress has enacted and codified a new bankruptcy law, Title 11 of the United States Code – Bankruptcy. The new law which becomes effective on October 1, 1979, repeals the Bankruptcy Act of 1898. . . . The existing section 6 of the Bankruptcy Act provides that the bankrupt is entitled to those exemptions that he would be entitled to under the law of the state of

---

[31] Prefatory Note to Sectional Analysis of HB 56, prepared by Legislative Affairs Agency. Document obtained from the Legislative Information Office, Juneau, from catalog records of HB 56 from 1979 (Legislative Library Catalog Card No. 7900300).

[32] Sectional Analysis of HB 56, at p. 34 (emphasis added).

[33] Mem. dated Aug. 15, 1979, from James L. Baldwin, Legislative Counsel, to Charlie Parr, Chairman, House Judiciary Committee, regarding "Comparison of exemption schedules (Work Order #7308). Document obtained from the Legislative Information Office, Juneau, from catalog records of HB 56 from 1979 (Legislative Library Catalog Card No. 7900300).

12

>his domicile and nonbankruptcy federal law. The Bankruptcy Reform Act of 1978 (Public Law 95-598) establishes a list of federal exemptions which are available to an individual debtor. The debtor may choose to be protected by the federal exemptions or he may choose the exemptions provided by his state law (as under the current bankruptcy act). It should be noted that the new federal act has a provision which permits states to "opt out" of the federal bankruptcy exemption alternative. If a state chooses to do this, a debtor domiciled there would only have available the exemptions authorized by state law. The choices between state and federal exemptions are mutually exclusive alternatives and may not be combined by a debtor; . . . *Under this system it is expected that debtors will compare the state and federal exemptions and choose the alternative more advantageous to him. . . .* [34]

An identical memorandum was submitted to the Alaska Code Revision Commission on February 21, 1980.[35]

Although the Bankruptcy Code's changes to the exemption scheme were reviewed by the Alaska Legislature, there is nothing to indicate that the predecessor to AS 09.38.055 was intended as an opt out statute. In fact, the only concern that seems to have been raised was with regard to the second sentence of the proposed statute, which prohibited debtors in bankruptcy from taking exemptions which were otherwise allowed an Alaskan resident. The Legislative Affairs Agency commented that it was not clear whether a state

---

[34] *Id.* (emphasis added).

[35] Memorandum from James L. Baldwin, Legislative Counsel, to John Abbott, Chairman, Code Revision Commission, regarding Comparison of exemption schedules, dated Feb. 21, 1980. Document obtained from microfiche records pertaining to HB 74 maintained at the Alaska Legislative Information Office, Anchorage, Alaska.

13

could "provide that less than all of its exemption laws apply to a bankruptcy proceeding."[36] This appears to have been a legitimate concern, as challenges to other state statutes which have similar provisions have been successful.[37]

In 1981, HB 56 was amended and reintroduced to the Alaska Legislature as House Bill 74.[38] An analysis of the potential conflicts between HB 74 and the Bankruptcy Code was prepared by the Legislative Affairs Agency which noted:

> 11 U.S.C. § 522 exempts from the debtor's estate benefits such as the debtor's right to receive social security, unemployment compensation, local public assistance benefits, etc. Therefore, HB 74 also would exempt social security benefits, etc. 11 U.S.C. 522(b)(1) meanwhile says that an individual debtor may exempt from property of his estate those benefits and compensation listed in Sec. 522, "unless the State law that is applicable to the debtor . . . specifically does not so authorize". Since Sec. 09.38.015(a)(6) specifically does <u>authorize</u> such an exemption, HB 74 and federal law are clearly consistent.[39]

---

[36] Sectional Analysis of HB 56, at p. 34.

[37] 4 *Collier on Bankruptcy* at ¶ 522.02[4] p. 522- 23, noting that state exemption statutes which apply only to debtors in bankruptcy cases are vulnerable to attack on ground that they are bankruptcy provisions which a state cannot enact, rather than state exemption laws. *See also In re Wallace*, 347 B.R. 626 (Bankr. W.D. Mich. 2006); *In re Cross*, 255 B.R. 25 (Bankr. N.D. Ind. 2000).

[38] Memorandum dated Jan. 9, 1981, from John Abbott, Chairman, Alaska Code Revision Commission, to Chairman, Alaska Legislative Counsel, re: Revision of State Exemption Laws. Document obtained from microfiche records pertaining to HB 74 maintained at the Alaska Legislative Information Office, Anchorage, Alaska.

[39] Memorandum regarding Conflict Between HB 74 and current federal law (Work Order Number 12-1274), to House Judiciary Committee from Bernie M. Tuggle, Legislative Legal Extern, dated March 31, 1981, at p. 1 (emphasis in original). This memorandum was transmitted to the House Judiciary Committee under cover of a Memorandum dated March 31, 1981, from Randolph G. Berry, Legislative Counsel, in which Mr. Berry stated that he had "reviewed the memorandum and agree with [its] conclusions." Documents obtained from microfiche records pertaining to HB 74 maintained at the Alaska Legislative Information Office, Anchorage, Alaska.

The second sentence of proposed AS 09.38.055, which prohibited debtors in bankruptcy from exempting certain permits, licenses and certificates as would otherwise be allowed to debtors under AS 09.38.015(b), was removed from the statute, and the remainder of AS 09.38.055 was ultimately enacted.[40] AS 09.38.055 has been amended once, in 1988, as part of Senate Bill 508, which doubled the amount of the Alaska homestead exemption and added a new provision, AS 09.38.017, to provide for the exemption of certain retirement plans.[41] AS 09.38.055 was amended to include this exemption right and change the reference from "The Bankruptcy Act" to "11 U.S.C. (Bankruptcy)."

Based on the language of AS 09.38.055 and my review of the legislative history, I conclude that Alaska has not opted out of the bankruptcy exemption scheme found in 11 U.S.C. § 522(d). Debtors who are residents of Alaska may take either the exemptions provided under state law or § 522(d), whichever exemption scheme is more advantageous.

IV.  <u>The Respective Rights and Remedies of the Parties</u>

At the time the debtors filed their petitions, they still retained an interest in the levied portion of their PFDs because the state court had not yet determined their objection to levy and ordered release of the PFDs to ANIC. Accordingly, the debtors could claim the levied portion of the PFDs exempt under § 522(d)(5). However, the claim of exemption, by

---

[40] § 2 ch. 62 SLA 1982.

[41] § 10 ch. 135 SLA 1988.

15

itself, will not entitle the debtors to recover their PFDs. They must move to avoid ANIC's judicial liens in the PFDs, in accordance with 11 U.S.C. § 522(f).[42]

ANIC holds judicial liens against the levied portion of the PFDs, but its collection efforts were stayed once the debtors filed their petitions.[43] Any post-petition actions taken by ANIC or the state court with regard to the enforcement of ANIC's liens against the PFDs are therefore void.[44] If ANIC wishes to pursue collection of the PFDs in state court before this bankruptcy case is closed, it must first obtain relief from stay from this court.[45]

Conclusion

For the reasons stated above, ANIC's objection to the debtors' claims of exemption in the levied portion of their PFDs is overruled. The parties may pursue their rights and remedies as noted above. An order will be entered consistent with this memorandum.

Dated: September 26, 2008

BY THE COURT

/s/ Donald MacDonald IV

---

[42] As noted above, a debtor may seek relief under *either* subsections 522(f) or (h), to the extent applicable, to recover exempt property. Here, had the state court ordered release of the PFDs to ANIC *within 90 days of the filing of the debtors' petitions*, it would appear to this court that the debtors could then seek to avoid the transfer of their interests in the PFDs as preferences under § 522(h).

[43] 11 U.S.C. § 362(a) (2008).

[44] *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1082 (9th Cir. 2000)(en banc), *citing Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992), *and Phoenix Bond & Indemnity Co. v. Shamblin (In re Shamblin)*, 890 F.2d 123, 125 (9th Cir. 1989).

[45] 11 U.S.C. § 362(d)(2008).

DONALD MacDONALD IV  
United States Bankruptcy Judge

Serve: Daryl Warner Tinkess and Sally Ann Tinkess, Pro Se Debtors (Case No. K08-00153-DMD)
       Donald Hayes, Pro Se Debtor (Case No. K08-00155-DMD)
       Daniel Hayes and Vicky Hayes, Pro Se Debtors (Case No. K08-00156-DMD)
       M. Boutin, Esq. (for ANIC)
       L. Compton, Trustee
       Anchorage Superior Court (*courtesy copy*) re: Case No. 3AN-06-13508CI, *Alaska Nat'l Insurance Co. v. 3D Logging, et al.*
       U. S. Trustee

              9/26/08